# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**GEORGE GARCIA,**<br><br>Defendant. | Case No. 19-CR-20007-3-SRB |

## MEMORANDUM AND ORDER

Defendant George Garcia currently awaits trial under an order of detention issued by Magistrate Judge Teresa J. James. *See* Doc. 182. When Garcia first appealed that detention order, Judge Robinson denied Garcia's appeal, finding, like Judge James, that Garcia's repeated noncompliance with the Court's orders not to use or possess marijuana made continuing his release, under any conditions, unlikely to reasonably assure his appearance at trial. *See* Doc. 193. Garcia then filed a motion requesting that Judge James reconsider his detention and order him released on the alternative grounds that: (1) the COVID-19 pandemic is a changed circumstance that makes his temporary release necessary under 18 U.S.C. § 3142(i); and (2) detaining him based on his allegedly state-authorized, medical use of marijuana violates the Consolidated Appropriations Act, 2020 ("CAA"). *See* Doc. 206. Judge James rejected these positions and denied Garcia's motion. *See* Doc. 211. Garcia now appeals Judge James' decision. For the below-discussed reasons, the Court denies Garcia's Motion to Appeal Denial of Request to Reconsider Magistrate's Order Revoking Pretrial Release and Order of Detention Pending Trial (Doc. 212).

**I.     Background**

Earlier orders of the Court detail the relevant procedural history underlying Garcia's detention. *See* Docs. 182 at 1–6; 193 at 1–3; 211 at 1–3.  To expedite ruling on Garcia's time-sensitive request, that history need not be repeated here but will be discussed below as necessary.

**II.    Standard of Review**

Garcia requests that the Court reconsider granting him the conditional pretrial release Judge James again denied him. Pretrial release is governed by 18 U.S.C. § 3142.  This Court reviews Garcia's request de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  But that de novo review does not require this Court to reevaluate § 3142(g) factors already addressed in the Court's initial detention decision—at least, not unless Garcia now presents evidence that both (1) "was unavailable at the initial detention hearing" and (2) "material[ly] bear[s] on the issue of whether there are conditions of release that will reasonably assure [Garcia's] appearance at trial and the safety of the community." *United States v. Dermen*, No. 20-4000, 2020 WL 1027785, at *2–*3 (10th Cir. Mar. 3, 2020) (citing 18 U.S.C. § 3142(f)(2)).

**III.   Discussion**

   **A.    COVID-19**

Garcia first argues that the health risks he faces from the COVID-19 pandemic while detained make his temporary release necessary under 18 U.S.C. § 3142(i).  Section 3142(i) empowers the Court to temporarily release Garcia if it determines that release "to be necessary . . . for a[] compelling reason."[1]  Whether the COVID-19 pandemic's potential impact on Garcia's

---

[1] Section 3142(i) also permits the Court to release Garcia if "necessary for preparation of [Garcia's] defense." Though Garcia argued this point in some detail to Judge James, *see* Dox 206 at 12, his brief to this Court lacks any such specific argument.  As such, nothing in Garcia's brief to this Court convinces it that his defense necessarily depends on the Court granting him release.

health provides a compelling reason that necessitates releasing him depends on four nonexclusive factors: (1) the original grounds for his detention; (2) the specificity of his stated COVID-19 concerns; (3) the extent to which his proposed release plan mitigates or exacerbates his overall COVID-19 risks; and (4) the likelihood that his proposed release will increase others' COVID-19 risks. *United States v. Clark*, --- F. Supp. 3d ---, 2020 WL 1446895, at *3 (D. Kan. 2020). On balance, these factors do not favor releasing Garcia.

    **1.**     **Original Grounds for Garcia's Detention**

Garcia "urge[s] the Court to reconsider its finding that [he] is a flight risk." Doc. 212 at 27. But Garcia offers nothing more than his assertion that the COVID-19 pandemic "powerful[ly] incentiv[izes him] to abide by any release conditions." Doc. 212 at 26. Garcia's assurance that he will abide the Court's orders is no longer persuasive. In the Court's view, Garcia "eliminated any reasonable assurance of his appearance in court" by repeatedly disobeying the Court's orders that, while on release, he not use the drug he is charged with having conspired to traffic and possess. Doc. 193 at 8 (noting that Garcia "violated his bond condition to refrain from using marijuana *six times on record*" and, each time, failed to report and then denied his use). Even if the COVID-19 pandemic amounts to a changed circumstance, therefore, that circumstance leaves the Court unconvinced that "there are conditions of release that will reasonably assure [Garcia's] appearance at trial." *See Dermen*, 2020 WL 1027785, at *2 (citing 18 U.S.C. § 3142(f)(2)); *United States v. Calvert*, No. 19-40068-03-HLT, 2020 WL 1847754, at *2 (D. Kan. Apr. 13, 2020) ("A defendant's concerns that he . . . is facing heightened COVID-19 risks while incarcerated do not typically factor into a § 3142(f) analysis because the risk of harm *to the defendant* does not usually bear on whether the court can fashion conditions of release that will reasonably assure that the defendant is not a risk of nonappearance . . . ."). Garcia fails to "effectively override or at least sufficiently

counterbalance the findings that originally justified the pretrial detention order." *Clark*, 2020 WL 1446895, at *4. This factor weighs against Garcia's release request.

### 2. Specificity of Garcia's Detention-based COVID-19 Concerns

Between detention and release, Garcia claims detention poses the "far greater" risk to his health. Doc. 212 at 25. It is important, in this Court's view, to recognize and separately evaluate the potential COVID-19 risks at issue; these are the risks that, while detained, Garcia will (1) contract, (2) suffer severe illness from, and (3) receive inadequate care for COVID-19. Garcia claims no underlying health condition that would make contracting COVID-19 uniquely dangerous to his health. So, for this factor to favor him, he must show more than "generalized . . . fears and speculation," *Clark*, 2020 WL 1446895, at *3, that detention presently puts him at an increased risk of either contracting or receiving inadequate care for COVID-19.

Garcia initially claims that detention puts him at a greater risk of contracting COVID-19 because "[c]onditions of pretrial confinement"—like the lack of opportunity for social distancing and the in-and-out traffic of inmates and staff—"create the ideal environment for [COVID-19] transmission." Doc. 212 at 5. Garcia "may be at a greater risk of infection" in that incarceration generally provides less "opportunity to avoid crowds or adhere to social distancing guidelines." *United States v. Duncan*, No. 18-40030-01-HLT, 2020 WL 1700355, at *7 (D. Kan. Apr. 8, 2020). But "[e]ven non-confined individuals who are practicing appropriate mitigation efforts are still contracting the virus. It is *that* contagious." *Id.* And as to Garcia specifically, that increased risk of contraction remains hypothetical; "there is still no reported COVID-19 case in CoreCivic," his detention facility. *United States v. Sanders*, No. 19-20037-01-DDC, 2020 WL 1528621, at *4–*5 (D. Kan. Mar. 31, 2020).

While a COVID-19 outbreak at CoreCivic may, as Garcia claims, be inevitable, *see* Docs. 212 at 9, 212-4 at 15, Garcia has failed to show either that CoreCivic has abandoned the "reasonably effective" mitigation efforts approved in *Duncan* and *Clark* or that an outbreak is "imminent." *Duncan,* 2020 WL 1700355, at *7; *see also Clark*, 2020 WL 1446895, at *5 (discussing CoreCivic's efforts to mitigate COVID-19 contraction risks); *Calvert*, 2020 WL 1847754, at *4 ("CoreCivic is taking reasonable precautionary measures that are not inconsistent with the challenges that society as a whole is facing."). As such, Garcia's "generalized concerns about the possibility of an outbreak at the prison are insufficient to justify release because they would logistically result in the wholesale release of all inmates—an unworkable solution to the hypothetical possibility." *Duncan,* 2020 WL 1700355, at *7; *see also Clark*, 2020 WL 1446895, at *6 (noting that the inability to adhere to social distancing guidelines is "generalized to all individuals in the prison system and . . . not unique to [defendant].").

Garcia next claims that CoreCivic is ill-equipped to "provide adequate medical care when COVID-19 reaches the custodial population." Doc. 212 at 17. Apart from the social distancing issues already considered, Garcia's concern focuses on his assertion that, owing to the size of its population (over 900 detainees) relative to the size of its medical staff (1 doctor and 20 nurses) and the quantity of its medical resources (7 beds in the medical unit; 2 available coronavirus tests; and 0 intensive care unit beds, ventilators, or single-bed cells), Kansas City's "already strained" public healthcare system, not CoreCivic, will have to treat "CoreCivic inmates who become seriously ill from COVID-19." Doc. 212 at 16–17; *see also* Doc. 212-4 at 16–17.

Again, Garcia's claimed risk that any intensive care he might need to receive may fall to already-burdened medical providers outside CoreCivic is more hypothetical than actual. Garcia "cannot predict how CoreCivic might respond . . . any more accurately than many Americans can

predict how their local hospitals might respond." *Clark*, 2020 WL 1446895, at *6. And even imagined at its worst, Garcia's scenario leaves him not without care but facing the same "problems and shortages . . . being experienced by society generally." *Ducan,* 2020 WL 1700355, at *7. Nothing in Garcia's representations about CoreCivic's resources, therefore, undermines this Court's confidence that CoreCivic continues to be "using its best efforts to try to mitigate the COVID-19 risks to is employees and inmates, and . . . those efforts have been reasonably effective so far." *Id.*

Accordingly, this factor weighs against Garcia's release.

### 3. Comparative COVID-19 Risks Garcia Faces if Released
### – And –
### 4. COVID-19 Risks Others Face if Garcia is Released

For these third and fourth factors to favor release, Garcia "must propose a release plan tailored to mitigate overall risks, not exacerbate them." *Id.* at 8. Garcia proposes that, if released, he will drive to and live with his 55-year-old mother in Rosamond, California. Following a proposed "14 days of isolation in a separate space from his mother," Garcia intends to assist his mother and requests "permission for essential activities, such as: seeking medical treatment, trips to the grocery store (and the like) and pharmacy; employment; court appearances; attorney visits; and other court-ordered obligations." Doc. 212 at 30. In the Court's view, this proposal trades one set of hypothetical problems for another that likely puts others, if not Garcia himself, at greater risk.

Garcia's plan affords him no demonstrable comparative advantage. Garcia more likely enhances rather than lessens his exposure risk by driving cross-country to take up employment and essential errands in California—a state currently with 44,679 more confirmed cases than Kansas and 48,917 more confirmed cases than CoreCivic. *See* CENTERS FOR DISEASE CONTROL

AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 1, 2020); *United States v. Macias*, No. 16-20008-04-DDC, 2020 WL 1819891, at *4 (D. Kan. Apr. 9 2020) ("Releasing Defendant into the general population, where there are many people infected with disease, would in all likelihood significantly increase Defendant's COVID-19 risks."); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) ("a proposal to reside in a COVID-19 'hot spot,' excessive travel, contact with community members, and residing with an individual in her own high-risk category" carries its "own inherent risks"). Relative to home detention, Garcia's exposure risk obviously lessens to some degree if placed under home incarceration. But, as discussed above, the Court lacks confidence Garcia will adhere to its orders. Garcia has proven himself either unwilling or unable to refrain from obtaining and using marijuana. He has proven himself willing to conceal his disobedience. He also has defended—and, as discussed below, continues to defend—that conduct as an allegedly valid medical use. The Court has no reason to believe that formerly problematic behavior would not again occur if it returned Garcia to California. Garcia also offers nothing to show that, if exposed, California's healthcare system is better positioned than CoreCivic's and Kansas City's medical providers to treat him. *See Ducan,* 2020 WL 1700355, at *7. At best, then, the third factor neither favors nor disfavors releasing Garcia.

In contrast, Garcia's plan places others at greater risk. Garcia, who is more likely to defy than comply with the Court's release conditions, "poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the [him] for supervision, and others," like both the "law enforcement officers [who] will be forced to . . . return him to the District of Kansas . . . and

. . . the prison population when he inevitably returns to the facility." *Clark*, 2020 WL 1446895, at *7. The fourth factor, therefore, weighs against release.

\* \* \* \* \*

As no factor weighs in Garcia's favor but three factors weigh against his request, Garcia has failed to show that COVID-19 provides a compelling reason that necessitates releasing him.

### B.   Consolidated Appropriations Act, 2020

Garcia alternatively argues that continuing to detain him based on conduct allegedly permitted by California's medical-marijuana laws violates the CAA rider's directive that the DOJ not use CAA funds to prevent States from implementing their own medical-marijuana laws. *See* Doc. 212 at 31.  Garcia concedes that "[t]his Court addressed [his] argument regarding the government's violation of the Consolidated Appropriations Act, 2020 in its March 3, 2020, order." Doc. 212 at 30.  Nonetheless, Garcia requests review because he believes the Court's decision— "that [Garcia's] use was not medical," Doc. 193 at 10—shows it was unaware of "proof of his medical condition that had been presented to [Judge James] at [a] May 1, 2019, hearing." Doc. 212 at 30–31.  But the proof Garcia points to is neither new nor material.

Garcia introduced the exact evidence he now relies on at a May 1, 2019 bond revocation hearing that ended with Judge James giving him another shot at being on bond. Compare Doc. 117 with Docs. 212 at 31 n.76, 212-5 at 1–10.  When Garcia's bond was ultimately revoked, he failed to reintroduce that same evidence; rather, Garcia chose to present Judges James and Robinson only one of the five exhibits he introduced May 1, 2019, and now wishes the Court to consider. Compare Docs. 181 at 1, 184 at 20 with Doc. 212-5 at 1–10.  The proof Garcia points to, therefore, is not "new information . . . that was unknown to [Garcia] at the time of the initial detention hearing."

*Dermen*, 2020 WL 1027785, at *2 (citing 18 U.S.C. § 3142(f)(2)).  As such, Garcia cannot use the stale proof to breathe new life into his already twice-rejected CCA argument. *See id.* at *3.

The Court also doubts that the exhibits Garcia now wishes the Court to consider are material proof that the marijuana use underlying the revocation of his pretrial release was indeed a valid medical use authorized by California law. *See Dermen*, 2020 WL 1027785, at *2 (citing 18 U.S.C. § 3142(f)(2)).  The four exhibits Garcia originally failed to reintroduce consist of: a May 30, 2019 substance abuse treatment referral tracking form; a March 11, 2010 printed photograph of an x-ray depicting Garcia's leg; and two photographs depicting a November 27, 2013 hydrocodone prescription.  Even if these unexplained exhibits somehow demonstrated support for Garcia's claim to a medical need that marijuana might treat, the exhibits do nothing to show that the repeated use underlying his detention was indeed in accordance with California law.  The purported "prescription" on which Garcia's allegedly medical use of marijuana depends—the same exhibit already considered by Judges James and Robinson—is, by its own express and unequivocal terms, "void and/or invalid" on the condition that a court order prohibits Garcia's use of cannabis. Doc. 212-5 at 9.  At the time Garcia obtained that April 3, 2019 "Physician's Statement," he was already under orders "not to use or possess . . . state-authorized marijuana." Doc. 182, at 1–2 (quoting Doc. 41-4 at 3).

Even California law gives effect to conditions prohibiting otherwise lawful medical marijuana use for certain defendants on probation, bail, or parole. *See, e.g.*, Cal. Health & Safety Code § 11362.795 (creating procedure where "[a]ny criminal defendant who is eligible to use cannabis pursuant to Section 11362.5 may request that the court confirm that he or she is allowed to use medicinal cannabis while . . . on probation or released on bail" or parole.); *California v. Leal*, 149 Cal. Rptr.3d 9, 23 (Cal. Ct. App. 2012) ("[A] trial court has *inherent* authority and

discretion to consider limiting or banning the probationer's use of medical marijuana."); *California v. Hughes*, 136 Cal. Rptr. 3d 538, 543 (Cal. Ct. App. 2012) ("[T]he only reasonable interpretation of section 11362.795 . . . is that it authorizes a trial court to impose a condition of probation that prohibits a defendant from the use of medical marijuana."); *California v. Moret*, 104 Cal. Rptr. 3d 1, 13 (Cal. Ct. App. 2009) ("[A] trial court has discretion to impose a no-marijuana-use probation condition on the holder of a medical marijuana card. . . . [S]ince a trial court may 'confirm' that the probationer is allowed to use marijuana while on probation, it would seem obvious that it may also not so 'confirm.'").

The Court struggles, therefore, to understand how detaining Garcia pretrial and thereby enforcing its own release condition that he not use marijuana—the exact controlled substance he is charged with having conspired to distribute and possess—conflicts with how California administers its own medical-marijuana laws.

**IV.   Conclusion**

IT IS THEREFORE ORDERED that Defendant George Garcia's Motion to Appeal the Denial of Request to Reconsider Magistrate's Order Revoking Pretrial Release and Order of Detention Pending Trial (Doc. 212) is DENIED.

**IT IS SO ORDERED**.

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: May 4, 2020